## VIERS *v.* DETROIT PAPER-PACKAGE CO.

JUDGMENT CREDITORS—LEASE OF CORPORATE PROPERTY—PRIORITY OF LIENS.

> A manufacturing corporation, heavily indebted, transferred to a third person, absolutely, all the goods and accounts on hand, and gave to him a 15-year lease of all machinery and appliances, with full control of the business, in consideration of his collecting in the accounts and applying the proceeds to the indebtedness, and of his investing in the business money sufficient to meet its reasonable demands, and of his admitting the corporation to a proportionate share of the net profits, if any, of the new concern. It was agreed that, if the lessee should pay indebtedness in excess of the value of the goods and accounts absolutely sold to him, such payments should be deducted from the valuation of the property and rights conveyed, as fixed by the parties for the purpose of estimating dividends. *Held,* that the lessee had no lien upon the leased property for payments made upon the corporate indebtedness in excess of the value of the property and accounts transferred to him absolutely, which would take priority to that of a judgment creditor of the corporation.

Appeal from Wayne; Donovan, J. Submitted October 20, 1898. Decided January 3, 1899.

Creditor's bill by Lewis M. Viers against the Detroit Paper-Package Company, William B. Thompson, James N. Mc Bride, and Hubert P. Dunbar. From a decree for complainant, defendants Mc Bride and Dunbar appeal. Affirmed.

Defendant the Detroit Paper-Package Company, a corporation, was organized in 1892, with a capital stock of $15,000. In 1894 its stock was increased to $30,000. It had not proved a successful venture; it was in debt, and its creditors were pressing for payment. On January 15, 1895, it entered into an agreement with defendants Mc-

Bride and Dunbar, by which it transferred to them its letters patent, and other applications for patents then pending, and all its stock, goods, materials, appurtenances, claims, and accounts, including the right to collect such accounts in their own names or otherwise, and also the good will of the business, "together with the right to possess, control, use, and operate, in the carrying on of such business, all the tools, implements, appurtenances, machinery, and rights covered by said letters patent within the United States, from a factory to be located at Owosso, Michigan, or such other places as they shall determine." The value of the property and rights conveyed was fixed at $25,345, upon which to estimate and determine dividends of profits between the respective parties. McBride and Dunbar agreed to invest money sufficient to meet the reasonable demands of the business, not, however, to exceed $15,000. They were to receive 10 per cent. on the amount of money invested by them before dividing the profits. The package company agreed to indemnify them from all loss, costs, expense, or damage which they might suffer by reason of any suits brought against them in consequence of the transfer of the property to them. Losses, if any, were to be borne ratably. McBride and Dunbar agreed to take the business and property as it stood at the date of the contract, and to "collect all claims and accounts owing to the package company, and with the proceeds thereof to pay and discharge its indebtedness to the extent which the amounts collected will pay, not exceeding the value of the stock and goods manufactured and in process of manufacture, which it has hereby absolutely sold and transferred to them." It further provided:

"In case the bills and claims collected, together with the property hereby absolutely sold and conveyed to second parties, shall exceed the amount of indebtedness of first party which may be paid by second parties, then, and in such case, such excess is to be held and considered as the common property of parties hereto, and as by them

119 MICH.—13.

invested in said business, and divided on the same basis as profits. And in the event that said second parties shall pay any indebtedness of first party in excess of the value of the property, claims, and accounts herein absolutely sold and transferred to the parties of the second part, not including any right of use of property, then, and in such case, such indebtedness so paid shall be deducted from said sum of $25,345, and the remainder of said last-mentioned sum shall be thenceforth considered as the basis of a division of net profits as aforesaid."

The agreement was to remain in force 15 years.

McBride and Dunbar took possession; erected a building at Owosso; transferred to it the machinery, etc., from Detroit, where the company was theretofore located; and entered upon the business. The accounts and some of the merchandise on hand were turned over to Messrs. Fox and Foley, creditors of the company, to sell and collect, and apply in payment of their debts.

Complainant was a creditor of the package company at the date of the above agreement. He subsequently brought suit, recovered a judgment of $1,258.29, and filed a creditor's bill in this case to reach the assets in the hands of McBride and Dunbar. Proofs were taken in open court, and a decree rendered in favor of complainant, directing McBride and Dunbar to deliver over to the receiver certain personal property found to be in their hands, to be sold to satisfy the judgment. From this decree McBride and Dunbar appealed.

*Thomas S. Jerome,* for complainant.

*Frank F. Bumps* (*James M. Goodell,* of counsel), for appellants.

GRANT, C. J. (*after stating the facts*). Counsel for the defendants concede that the contract was void as to creditors of the package company, but contend that McBride and Dunbar acted in good faith, without any intent to defraud the creditors; that they in good faith paid debts of the corporation exceeding the value of the

personal property and accounts sold and delivered to them; and that, therefore, they have a prior lien upon the personal property which was leased. They insist that the case is within the rule of *Walker* v. *Cady*, 106 Mich. 21. The parties differ widely as to the value of the assets and accounts turned over to McBride and Dunbar, and which they agreed to use in payment of the debts. They were informed that the company owed complainant. Mr. McBride testifies that he supposed it was a small amount, while Mr. Thompson, the manager of the corporation, who negotiated the agreement, testified that he informed them of complainant's full claim. They were under no obligation to pay debts in excess of the value of the property, claims, and accounts absolutely sold to them. They might do so, and, if they did, the contract provided that such overpayments should be deducted from the $25,345.

We find nothing in the record to indicate that McBride and Dunbar acted in bad faith. The legal effect, however, of this transaction, was to place the leased property beyond the reach of creditors, in a manner which the law does not permit. *Felker* v. *Chubb*, 90 Mich. 24. The trial judge evidently found that McBride and Dunbar were informed of complainant's claim. Upon this point McBride and Thompson are the sole witnesses, and we find nothing in the record to justify us in reaching a different conclusion from that of the trial judge. In view of the dispute as to the value of the property and accounts absolutely sold, and the remedy provided by the contract if McBride and Dunbar paid debts in excess of such value, we think the judge reached the correct conclusion, that defendants have no lien for such overpayment, and that the property leased is subject to complainant's judgment.

Decree affirmed, with costs.

The other Justices concurred.